**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

ROBERT LOWINGER,

                Plaintiff,

      v.

WPX ENERGY, INC., RICHARD E. MUNCRIEF, KIMBERLY S. LUBEL, JOHN A. CARRIG, KELT KINDICK, ROBERT K. HERDMAN, VALERIE M. WILLIAMS, KARL F. KURZ, CLAY M. GASPAR, D. MARTIN PHILLIPS, and DOUGLAS E. SWANSON,

                Defendants.

</td><td>

Case No. _____

JURY TRIAL DEMANDED

</td></tr>
</table>

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Robert Lowinger ("Plaintiff"), by and through his undersigned attorneys, alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by WPX Energy, Inc. ("WPX" or the "Company") and Devon Energy Corporation ("Devon"), with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications; (c) review of news articles, shareholder communications, and postings on WPX's and Devon's websites; and (d) review of other publicly available information.

## NATURE OF THE ACTION

1.    Plaintiff owns shares of WPX common stock, par value $0.01 per share ("WPX Common Stock") and brings this action to cure violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78n(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of WPX and Devon.

2.     On July 1, 2020, WPX's board of directors (the "Board") caused WPX to enter into an Agreement and Plan of Merger (as amended from time to time, the "Merger Agreement") with Devon and East Merger Sub, Inc., a Delaware corporation and wholly-owned, direct subsidiary of Devon ("Merger Sub").  The transaction referred to in the Merger Agreement (*i.e.* Merger Sub will merge with and into WPX, the separate corporate existence of Merger Sub will cease and WPX will continue as the surviving corporation in the merger as a wholly-owned, direct subsidiary of Devon) is referred to herein as the "Merger" or the "Proposed Transaction."

3.     Under the terms of the Merger Agreement, each share of WPX common stock issued and outstanding immediately prior to the effective time of the merger (the "effective time") will be converted into the right to receive 0.5165 shares of Devon common stock plus cash in lieu of any fractional share (the "Merger Consideration").

4.     The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of WPX.  Devon expects the Proposed Transaction to close in the first quarter of 2021.

5.     On November 5, 2020, in order to convince WPX's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of joint proxy statement/prospectus, which was filed by Devon on Form S-4 with the SEC (the "Form S-4").

6.     Defendants, in the Form S-4, tout the fairness of the Merger Consideration to the Company's stockholders.  However, they have failed to disclose material information necessary for WPX's stockholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Form S-4 materially incomplete and misleading.

7.     It is imperative that the material information that has been omitted from the Form S-4 be disclosed to WPX's stockholders prior to the forthcoming stockholder vote so that they can

properly exercise their corporate suffrage rights.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Section 14(a) of the Exchange Act and Rule 14a-9.

8.     Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including holding a stockholder vote on the Proposed Transaction, unless and until the material information discussed below is disclosed to WPX's stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331 as Plaintiff alleges violations of Section 14(a) of the Exchange Act.

10.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.

11.     In connection with the acts, omissions, conduct and wrongs alleged herein, Defendants used the mails and the means or instrumentalities of interstate commerce.

12.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391, because Defendants are found or are inhabitants or transact business in this District and because WPX Common Stock trades on the New York Stock Exchange ("NYSE"), which exchange is headquartered in this District.

## THE PARTIES

13.     Plaintiff is, and at all relevant times has been, a WPX stockholder.

14.     Defendant WPX Energy, Inc., is an independent energy producer with core positions in the Permian and Williston basins. WPX's production is approximately 80 percent oil/liquids and 20 percent natural gas. The company also has an infrastructure portfolio in the Permian Basin.  WPX Common Stock is traded on the NYSE under the symbol "WPX."

15.     Defendant Richard E. Muncrief has served on the Board, and as its Chairman and the Company's Chief Executive Officer ("CEO"), since 2014.

16.     Defendant Kimberly S. Lubel has served on the Board since 2011.

17.     Defendant John A. Carrig has served on the Board since 2011.

18.     Defendant Kelt Kindick has served on the Board since 2013.

19.     Defendant Robert K. Herdman has on the Board since 2011.

20.     Defendant Valerie M. Williams has on the Board since 2018.

21.     Defendant Karl F. Kurz has served on the Board since 2014.

22.     Defendant Clay M. Gaspar has served on the Board since 2019.

23.     Defendant D. Martin Phillips has served on the Board since 2020.

24.     Defendant Douglas E. Swanson, Jr., has served on the Board since 2020.

25.     The Defendants named in ¶¶15-24 are collectively referred to herein as the "Individual Defendants" and, with WPX, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### WPX Announces the Proposed Transaction

26.     On September 28, 2020, before the market opened for trading, WPX and Devon disclosed that they had entered into the Merger Agreement via a joint press release that stated, in pertinent part:

**Devon Energy and WPX Energy to Combine in Merger of Equals, Creating a Leading Energy Company Focused on Generating Free Cash Flow and Return of Capital to Shareholders**

## KEY HIGHLIGHTS

- Merger of equals creates a leading unconventional oil producer in the U.S.

- Builds a dominant Delaware Basin acreage position totaling 400,000 net acres

- All-stock transaction accretive to per-share metrics in year one and maintains financial strength

- Expect to achieve cost savings that will drive $575 million of annual cash flow improvements by year-end 2021

- Maintenance capital funding requirements in 2021 improve to $33 WTI and $2.75 Henry Hub pricing

- Enhanced operating scale accelerates transformation to a cash-return business model

- Combined company to implement "fixed plus variable" dividend strategy

- Dave Hager to serve as executive chairman of the board; Rick Muncrief to serve as president and CEO

OKLAHOMA CITY and TULSA, Okla., Sept. 28, 2020 (GLOBE NEWSWIRE) -- Devon Energy ("Devon") (NYSE: DVN) and WPX Energy ("WPX") (NYSE: WPX) today announced they have entered into an agreement to combine in an all-stock merger of equals transaction. The strategic combination will create a leading unconventional oil producer in the U.S., with an asset base underpinned by a premium acreage position in the economic core of the Delaware Basin. The combined company, which will be named Devon Energy, will benefit from enhanced scale, improved margins, higher free cash flow and the financial strength to accelerate the return of cash to shareholders through an industry-first "fixed plus variable" dividend strategy.

## TRANSACTION DETAILS

Under the terms of the agreement, WPX shareholders will receive a fixed exchange ratio of 0.5165 shares of Devon common stock for each share of WPX common stock owned. The exchange ratio, together with closing prices for Devon and WPX on Sept. 25, 2020, results in an enterprise value for the combined entity of approximately $12 billion. Upon completion of the transaction, Devon shareholders will own approximately 57 percent of the combined company and WPX shareholders will own approximately 43 percent of the combined company on a fully diluted basis.

The transaction, which is expected to close in the first quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by EnCap Investments L.P. own approximately 27 percent of the outstanding shares of WPX and have entered into a support agreement to vote in favor of the transaction. The closing of the transaction is subject to customary closing conditions, including approvals by Devon and WPX shareholders.

## CEO COMMENTARY

"This merger is a transformational event for Devon and WPX as we unite our complementary assets, operating capabilities and proven management teams to maximize our business in today's environment, while positioning our combined company to create value for years to come," said Dave Hager, Devon's president and CEO. "Bringing together our asset bases will drive immediate synergies and enable the combined company to accelerate free cash flow growth and return of capital to shareholders. In addition to highly complementary assets, Devon and WPX have similar values, and a disciplined returns-oriented focus, reinforcing our belief that this is an ideal business combination."

"This merger-of-equals strengthens our confidence that we will achieve all of our five-year targets outlined in late 2019," said Rick Muncrief, WPX's chairman and CEO. "The combined company will be one of the largest unconventional energy producers in the U.S. and with our enhanced scale and strong financial position, we can now accomplish these objectives for shareholders more quickly and efficiently. We will create value for shareholders of both companies through the disciplined management of our combined assets and an unwavering focus on profitable, per-share growth."

## STRATEGIC RATIONALE

- **Accelerates cash-return business model** – The merger accelerates Devon's transition to a business model that prioritizes free cash flow generation over production growth. With this highly disciplined strategy, management is committed to limiting reinvestment rates to approximately 70 to 80 percent of operating cash flow and restricting production growth to 5 percent or less annually. Free cash flow will be deployed toward higher dividends, debt reduction and opportunistic share repurchases.

- **Immediately accretive to financial metrics** – The transaction is expected to be immediately accretive to all relevant per-share metrics in the first year, including: earnings, cash flow, free cash flow, and net asset value, as well as accretive to return on invested capital. The combination is also expected to enhance the company's credit profile and decrease its overall cost of capital.

- **Maintains strong balance sheet and liquidity** – The all-stock transaction ensures the combined company will retain a strong balance sheet with a pro forma net debt-to-EBITDAX ratio of 1.6x on a trailing 12-month basis and is

targeting a leverage ratio of approximately 1.0x over the longer term. The combined company will also have excellent liquidity with approximately $1.7 billion of cash on hand and $3 billion of undrawn capacity on its credit facility expected at closing.

- **Increases scale and diversification** – The transaction creates one of the largest unconventional oil producers in the U.S. with production of 277,000 barrels per day. The combined company will benefit from a premier multi-basin portfolio, headlined by the world-class acreage position in the Delaware Basin that is 400,000 net acres and accounts for nearly 60 percent of the combined company's total oil production. The Delaware Basin acreage is geographically diversified between southeast New Mexico and Texas, with only 35 percent of the leasehold on federal land. The consolidated Delaware footprint provides a multi-decade inventory of high-return opportunities at combined activity levels of 17 drilling rigs. The balance of the portfolio will be diversified across high-margin, high-return resource plays in the Anadarko Basin, Williston Basin, Eagle Ford Shale and Powder River Basin.

- **Drives significant cost synergies** – Cost savings from initiatives underway in the second half of 2020 and synergies resulting from the merger are expected to drive $575 million in annual cash flow improvements by year-end 2021. These cost improvements are expected to be attained through operational efficiencies, general and administrative savings and reduced financing expense. The net present value of these cost synergies over the next 5 years equates to more than $2 billion of value. The all-stock transaction structure allows shareholders of both Devon and WPX to benefit from the cost synergies and significant upside potential of the combined company.

- **Supports implementation of a "fixed plus variable" dividend strategy** – With the business scaled to consistently generate free cash flow, Devon is initiating a new dividend strategy that pays a fixed dividend and evaluates a variable distribution on a quarterly basis. The fixed dividend is paid quarterly at a rate of $0.11 per share and the target payout is approximately 10 percent of operating cash flow. In addition to the fixed quarterly dividend, up to 50 percent of the remaining free cash flow on a quarterly basis will be distributed to shareholders through a variable distribution. This enhanced dividend strategy is effective immediately upon close of the transaction.

- **Shared commitment to ESG excellence –** Both Devon and WPX share an uncompromising commitment to ESG leadership, employee safety and environmental responsibility. Consistent with this commitment, the combined company will pursue measurable ESG targets, including methane intensity reduction, and will have progressive actions and practices in place to advance inclusion and diversity. Further, ESG metrics will be incorporated into the compensation structure and the board will monitor ESG goals and results.

- **Combines complementary cultures** – Devon and WPX share similar values and this combination is designed to optimize the strengths of both companies' operating philosophies to drive the continued growth and success of the business.

### LEADERSHIP AND HEADQUARTERS

Following the merger, the board of directors will consist of 12 members, 7 directors from Devon and 5 from WPX including the lead independent director. Dave Hager will be appointed executive chairman of the board, and Rick Muncrief will be named president and CEO. The combined company's executive team will include Jeff Ritenour as executive vice president and chief financial officer, Clay Gaspar as executive vice president and chief operating officer, David Harris as executive vice president and chief corporate development officer, Dennis Cameron as executive vice president and general counsel, and Tana Cashion as senior vice president of human resources. The combined company will be headquartered in Oklahoma City.

### PRELIMINARY PRO FORMA 2021 OUTLOOK

Detailed forward-looking guidance for the full-year 2021 will be provided upon closing of the transaction. Based on current supply and demand dynamics, product inventory levels, and other leading economic indicators, the company expects to design capital activity plans to maintain base production.

The maintenance capital requirements to keep oil production flat in 2021 versus 2020 fourth-quarter exit rates of greater than 280,000 barrels per day is estimated at approximately $1.7 billion. Pro forma for cost synergies, these maintenance capital requirements in 2021 are estimated to be funded at $33 WTI and $2.75 Henry Hub pricing.

### ADVISORS

J.P. Morgan Securities LLC is serving as financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor to Devon. Citi is serving as financial advisor and Kirkland & Ellis LLP is serving as legal advisor to WPX. Vinson & Elkins LLP is serving as legal advisor to EnCap Investments L.P.

**The Preclusive Deal Provisions**

27.     The Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for WPX.

28.     Specifically, pursuant to the Merger Agreement and a Support Agreement entered into in connection therewith, Defendants agreed to: (i) a strict non-solicitation provision that prevents WPX from soliciting other potential acquirers or even continuing discussions and negotiations with potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish information about any competing bid to Devon; and (iii) a provision that requires WPX to pay a termination fee of $75 million if the Merger Agreement is terminated by WPX in certain circumstances.

29.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of WPX.

30.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that WPX's stockholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

**Interests of the Officers and Directors of WPX to Completing the Merger**

31.     Certain of the officers and/or directors of the Company have significant financial interests in completing the Merger.

32.     The Form S-4 explains (at page 91) that certain stock options and restricted stock held by WPX employees and directors will vest and be entitled to receive the Merger Consideration, in addition to certain change of control and other agreements with Mahon and others.

33.     The following chart, taken from the Form S-4, shows some of the potential payouts to WPX's officers and directors as a result of the Proposed Transaction:

| Name | Cash ($) | Equity ($) | Perquisites/Benefits ($) | Total ($) |
|------|----------|------------|--------------------------|-----------|
| Richard Muncrief | $ 8,587,441 | $ 9,949,348 | $                25,000 | $ 18,561,789 |
| J. Kevin Vann | $ 3,791,988 | $ 3,093,913 | $                25,000 | $  6,910,901 |
| Dennis Cameron | $ 2,724,185 | $ 1,668,796 | $                25,000 | $  4,417,981 |
| Clay Gaspar | $ 4,439,045 | $ 4,369,717 | $                25,000 | $  8,833,762 |
| Bryan Guderian | $ 3,131,394 | $ 2,219,281 | $                25,000 | $  5,375,675 |

34.     In addition to receiving over $18.5 million as a result of the Merger, Defendant Muncrief will serve as president and CEO of the post-Merger company.

35.     The Form S-4 also explains that the merger agreement provides that the board of directors of the resulting company and the resulting bank will consist of 12 directors, five of whom shall be designated by WPX. The directors designated by WPX shall be selected from among the current directors of WPX as of the effective time of the merger.

## MATERIALLY FALSE OR MISLEADING STATEMENTS IN THE FORM S-4

36.     Defendants were obligated to carefully review the Form S-4 before it was filed with the SEC and disseminated to WPX's stockholders to ensure that it did not contain any materially false and misleading statements or material misrepresentations or omissions.  However, the Form S-4 misrepresents or omits material information necessary for WPX stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction.

### Material Omissions Relating to the Proposed Transaction's Background Process

37.     The Form S-4 omits material information relating to the sale process leading up to the Proposed Transaction by stating that in the fall of 2019, WPX and "Company A" executed a mutual confidentiality agreement to facilitate the analysis of a strategic transaction.

38.     The Form S-4 fails to state whether the confidentiality agreement with Company A is still in effect or contains a "Don't-Ask, Don't-Waive" ("DADW") standstill provision precluding Company A from making a topping bid for WPX superior to that which the Company agreed to with Devon.

10

39. These facts are material to WPX stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

**Material Omissions Relating to Forecasted Financial Information**

40. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading.

41. On May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy. One of the new C&DIs on forward-looking information, such as financial projections, requires companies to provide any reconciling metrics that are available without unreasonable efforts.

42. In order to make the projections included on page 88-90 of the Form S-4 complete and not materially misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

43. The Form S-4 provides several projections for non-GAAP metrics, including Adjusted EBITDA, but fails to disclose necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

44. Failure to provide complete and full disclosure of the line item projections for the metrics used to calculate those non-GAAP metrics leaves WPX stockholders without the necessary, material information to reach a fully-informed decision concerning the Company, the fairness of the merger consideration, and whether to vote in favor of the Proposed Transaction.

**Material Omissions Relating to Financial Analyses**

45. With respect to Citigroup Global Markets Inc.'s ("Citi") *Selected Public Companies Analyses*, the Form S-4 fails to disclose: (i) the individual multiples and financial

benchmarking metrics for each of the companies observed by Citi in its analyses; and (ii) the bases for selecting EBITDA and CFPS multiples observed for 2021 and 2022. The failure to disclose each of the selected companies' multiples, as well as WPX's and Devon's corresponding multiples, causes the Form S-4 to be misleading, as stockholders cannot observe whether the selected companies truly are comparable to the Company, or whether the companies were selected to make the merger consideration appear fair.

46.     With respect to Citi's *Discounted Cash Flow Analyses*, the Form S-4 omits: (i) the inputs used to calculate discount rates ranging from 7.7% to 8.5% for WPX and 7.8% to 8.8% for Devon; (ii) the terminal values used; and (iii) the bases for using EBITDA trading multiples ranging from 3.9x to 5.3x in order to derive a range of estimated terminal values for WPX and Devon in 2025.

47.     With respect to Citi's *Net Asset Value Analyses*, the Form S-4 fails to disclose: (i) the after-tax net present values utilized, and the bases for the discount rates used in determining those values; (ii) the unlevered, after-tax free cash flows that WPX was forecasted to generate from WPX's proved developed producing reserves and currently undeveloped resources; (iii) the unlevered, after-tax free cash flows that Devon was forecasted to generate from Devon's proved developed producing reserves and currently undeveloped resources; (iv) the projected midstream distributions of Catalyst Midstream Partners LLC to WPX during the fiscal years ending December 31, 2021 through December 31, 2025, utilizing for a terminal adjusted EBITDA multiple of 4.1x, and the bases for selecting that terminal adjusted EBITDA multiple; (v) WPX's estimated non-drilling and completion capital expenditures, corporate expenses and net hedge and other gains and losses; (vi) Devon's estimated non-drilling and completion capital expenditures, corporate

expenses and net hedge and other gains and losses; and (vii) the estimated net debts utilized as of December 31, 2020.

48.    With respect to Citi's review of publicly available Wall Street research analysts' price targets for WPX Common Stock and Devon Common Stock, the Form S-4 omits the public equity research analysts that were reviewed and each of their specific price targets.  Without this omitted information, WPX's stockholders cannot determine whether the limited data presented accurately reflects the value of their stock.

**Material Omissions Relating to Citi's Interests**

49.    The Proxy Statement omits material information concerning the potential conflicts of interest faced by Citi.  More specifically, the Proxy Statement states (on page 86):

….  Citi and its affiliates in the past have provided, currently are providing and in the future may provide investment banking, commercial banking and other similar financial services to WPX and/or certain of its affiliates unrelated to the proposed merger, for which services Citi and its affiliates have received and expect to receive compensation, including, during the approximately two-year period prior to the date of Citi's opinion, having acted or acting as (i) joint book-running manager in connection with certain debt offerings of WPX and (ii) a lender under certain credit facilities of WPX, for which services described in clauses (i) and (ii) above Citi and its affiliates received during such approximately two-year period aggregate fees of approximately $5 million from WPX and/or certain of its affiliates. As the WPX Board also was aware, Citi and its affiliates in the past have provided, currently are providing and in the future may provide investment banking, commercial banking and other similar financial services to Devon and/or certain of its affiliates, for which services Citi and its affiliates have received and expect to receive compensation, including, during the approximately two-year period prior to the date of Citi's opinion, having acted or acting as (i) financial advisor to Devon in connection with a divestiture transaction and (ii) joint lead arranger, bookrunner and syndication agent in connection with, and as a lender and letter of credit issuer under, certain credit facilities of Devon and/or certain of its affiliates, for which services described in clauses (i) and (ii) above Citi and its affiliates received during such approximately two-year period aggregate fees of approximately $2 million from Devon and/or certain of its affiliates. In the ordinary course of business, Citi and its affiliates may actively trade or hold the securities or financial instruments (including loans and other obligations) of WPX, Devon and/or their respective affiliates for their own account or for the account of customers and, accordingly, may at any time hold a long or short position or otherwise effect transactions in such securities or financial instruments. In addition, Citi and its affiliates (including

13

Citigroup Inc. and its affiliates) may maintain relationships with WPX, Devon and/or their respective affiliates

50.     The Form S-4, however, fails to disclose the timing and nature of the services performed by Citi and the amount of compensation Citi received or will receive for providing such services.

51.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

                              *        *        *

52.     The omission of the foregoing information renders the "Background of the Merger" and "Opinion of WPX's Financial Advisor" sections of the Form S-4 materially incomplete, in contravention of the Exchange Act.

## COUNT I

### AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Section 14(a)(1) makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. §78n(a)(1).

55.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

56.     Defendants have issued the Form S-4 with the intention of soliciting stockholders' support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Form S-4, which fails to provide critical information regarding, among other things, the background of the transaction and financial projections for the Company.

57.     In so doing, Defendants omitted material facts necessary to make the statements made not misleading.  Each Defendant, by virtue of their roles as officers and/or directors, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Form S-4, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

58.     Defendants knew or were negligent in not knowing that the Form S-4 is materially misleading and omits material facts that are necessary to render it not misleading.  Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

59.     Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Form S-4, rendering the sections of the Form S-4 identified above materially incomplete and misleading.  Indeed, Defendants were required to be

particularly attentive to the procedures followed in preparing the Form S-4 and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

60.     Defendants were, at the very least, negligent in preparing and reviewing the Form S-4.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Form S-4 or failing to notice the material omissions in the Form S-4 upon reviewing it, which they were required to do carefully as the Company's directors.

61.     The misrepresentations and omissions in the Form S-4 are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

62.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Form S-4;

B.     Directing Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 12, 2020

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

By: */s/* Michael J. Klein
      Michael J. Klein
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
Email: mklein@aflaw.com

*Attorneys for Plaintiff*